RICKER, Appellant,

v.

JOHN DEERE INSURANCE COMPANY et al., Appellees.

[Cite as *Ricker v. John Deere Ins. Co.* (1998), 133 Ohio App.3d 759.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE11–1505.

Decided Sept. 29, 1998.

760

762

*Law Offices of Russell A. Kelm, Russell A. Kelm* and *Joanne Weber Detrick,* for appellant.

*Arter & Hadden, David C. Patterson, Gary S. Batke* and *Robert R. Dunn,* for appellees.

*Per Curiam.*

Plaintiff-appellant, James G. Ricker, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendants-appellees, John Deere Insurance Company ("John Deere") and James A. Kurzawa, on plaintiff's claims of age discrimination, unpaid commissions, declaratory judgment regarding the enforcement of a non-competition agreement, intentional interference with a contractual relationship, and unlawful retaliation.

John Deere hired plaintiff in 1982 to sell commercial insurance policies. On April 12, 1996, John Deere terminated plaintiff's employment, citing poor performance and disloyalty to the company as the bases for its decision. Plaintiff contends that John Deere terminated his employment as part of a systematic effort to force out its older, highly compensated sales force. Plaintiff was fifty-three years old when John Deere terminated his employment.

On April 17, 1996, John Deere initiated a replevin action against plaintiff in the Franklin County Court of Common Pleas, seeking the return of files pertaining to its customers. On May 2, 1996, plaintiff initiated this action in the same court. Plaintiff's complaint asserted three claims: age discrimination, earned but unpaid commissions, and a declaratory judgment concerning the enforceability of a non-competition agreement between him and John Deere entitled the "Market Protection Agreement" ("MPA"). John Deere, on May 15, 1996, amended its replevin action to include a request for an injunction enjoining plaintiff from violating the terms of the MPA. On May 30, 1996, plaintiff amended his complaint to assert two additional claims, the first alleging that John Deere intentionally interfered with a contractual relationship between plaintiff and another insurance agency, and the second alleging that John Deere unlawfully retaliated against him for filing his age discrimination claim. The trial court consolidated the two separate actions in an entry filed July 31, 1996.

In the amended replevin action that John Deere initiated, the trial court initially issued an order of replevin requiring plaintiff to return John Deere's customer files and an order restraining him from violating the terms of the MPA. Following an evidentiary hearing, the trial court vacated the temporary restraining order, denied John Deere's request for an injunction, denied its motion for contempt of the replevin order, and determined that plaintiff had not signed the MPA and it therefore could not be enforced against him. John Deere appealed to this court, which affirmed the trial court's decision in *John Deere Ins. Co. v. Ricker* (Aug. 21, 1997), Franklin App. No. 96APE10–1426, unreported, 1997 WL 515560.

In the remaining action, John Deere filed a motion for summary judgment in response to plaintiff's amended complaint. The trial court granted the motion in

a judgment journalized on November 13, 1997. Plaintiff appeals, assigning the following error: "The trial court erred in granting summary judgment against plaintiff."

In accordance with Civ.R. 56, the evidence must be construed most strongly in favor of the non-moving party; summary judgment should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the non-moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A motion for summary judgment forces the moving party to inform the court of the basis of the motion and to identify portions in the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, 276. If the moving party makes that showing, the non-moving party then must produce evidence on any issue for which the party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus (*Celotex v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed).

## I. Age Discrimination

Plaintiff's amended complaint alleges age discrimination in violation of R.C. 4112.02(A), which provides:

"It shall be an unlawful discriminatory practice * * * [f]or any employer, because of the * * * age * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent. *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 583, 664 N.E.2d 1272, 1277. Two methods, known as the direct and indirect methods of proof, may be utilized to establish discriminatory intent in an age discrimination case. See *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 127, 672 N.E.2d 145, 147. The Supreme Court of Ohio has instructed Ohio courts to apply the methods in accordance with federal age discrimination law. *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 147, 6 OBR 202, 202–203, 451 N.E.2d 807, 809.

Under the direct method, "a plaintiff may establish a * * * case of age discrimination * * * by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent." *Mauzy, supra,* paragraph one of the syllabus. A plaintiff pursuing a claim under the

direct method must establish a causal link or nexus between the discriminatory statements or conduct and the prohibited act of discrimination. *Byrnes, supra,* 77 Ohio St.3d at 129, 672 N.E.2d at 148–149.

If the evidence is insufficient to proceed under the direct method, a plaintiff may then seek to establish discriminatory intent indirectly through the analysis set forth in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, as adopted and modified in *Barker, supra,* to fit a claim of age discrimination. The indirect method requires a plaintiff to demonstrate "(1) that he or she was a member of the statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class." *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439, syllabus, citing *Barker, supra,* at paragraph one of the syllabus. If a plaintiff successfully establishes the four-part test adopted in *Barker,* a presumption of age discrimination is created. The burden of production then shifts to the employer, who may rebut the presumption by coming forward with evidence of a legitimate non-discriminatory reason for the plaintiff's discharge. *Barker, supra,* at paragraph one of the syllabus. If the employer successfully rebuts the presumption of age discrimination, the plaintiff must then be allowed to present evidence that the employer's proffered reason was a mere pretext for unlawful discrimination. *Id.*

A. Direct Method

On appeal, plaintiff essentially makes two arguments under the direct method. Initially, he argues that the trial court failed to construe evidence of age-biased comments, which John Deere management allegedly made, most strongly in his favor. Next he argues that the court failed to consider evidence relating to John Deere's termination of other older employees, who plaintiff alleges were terminated as part of a plan to restaff the company with a younger sales force.

Plaintiff's first argument is lacking because the evidence in the record fails to establish a causal link or nexus between the alleged discriminatory statements and his termination. Under the direct method, "comments which are isolated, ambiguous or abstract * * * cannot support a finding of age discrimination." *Byrnes, supra,* 77 Ohio St.3d at 130, 672 N.E.2d at 149. Plaintiff's evidence consists of remarks restated in an affidavit from plaintiff and in one from Charles O'Bryant, a salesperson at John Deere. Together, these affidavits point to instances where management personnel at John Deere allegedly said: "It was not good policy to let a guy sit in the field for 20 years," "a lot of [long-time employees] * * * were not going to make it because of the new compensation structure," "John Deere * * * had a lot of [long-time employees] who were

sitting around getting fat," "many of the [long-time] employees would not survive," and "you cannot teach an old dog new tricks."

Just as in *Byrnes*, however, the remarks cited in the affidavits in large part were said neither to nor about plaintiff and were distant in time and fact from his termination. Moreover, many of the comments are ambiguous, relating more directly to tenure or length of service in the company than to age. The only comment with any direct nexus to plaintiff was made by James Kurzawa, plaintiff's immediate supervisor. Kurzawa's statement that "you cannot teach an old dog new tricks" related to his comment that plaintiff had been employed by the company for so long that he would not be able to change and adapt to the new requirements imposed by the company to improve its sales operations.

Kurzawa's isolated and ambiguous comment, even if construed in plaintiff's favor, is insufficient to establish a claim of age discrimination. See *J.R. Valle v. Johnson Controls World Services, Inc.* (S.D.Miss.1996), 957 F.Supp. 1404, 1421 (in light of the record as a whole, comment that "[y]ou can't teach an old dog new tricks" by a member of the company's evaluation board did not show discrimination on the basis of age); *Getschmann v. James River Paper Co., Inc.* (D.Conn. 1993), 822 F.Supp. 75, 78, affirmed without opinion (C.A.2, 1993), 7 F.3d 221 (in light of the record as a whole, comments by plaintiff's supervisor that "it sometimes is difficult to teach an old dog new tricks" and plaintiff is "set in his ways" could not satisfy burden of proving pretextual discrimination).

As a result, according to *Byrnes*, the comments plaintiff cites are insufficient on this record to establish discriminatory intent under the direct method.

 Under his second argument concerning the direct method, plaintiff attempts to show discrimination against him with evidence that John Deere discriminated against other similarly situated employees. Plaintiff, however, did not provide the court with sufficient evidence to establish such a claim. Plaintiff presented the court with only the two noted affidavits. Plaintiff's affidavit repeats nearly verbatim the allegations contained in his complaint. For example, plaintiff states the following in his affidavit:

"I was terminated as part of a systematic effort by John Deere to force out its older, highly compensated salesforce."

"John Deere * * * began a pattern of systematic harassment of its older salesmen by imposing increasingly onerous requirements for reports, sales presentations and paperwork, with which John Deere knew it was impossible to comply. When older salesmen would not or could not comply, they were placed on probation and then terminated."

"John Deere has terminated or forced the resignation of most of its long-term salesmen over age 40 * * *."

Although a plaintiff may rely on evidence of any nature to establish discriminatory intent under the direct method, some causal link or nexus must exist between the employer's alleged discriminatory conduct and the plaintiff to give rise to a permissible inference that the employer acted with discriminatory animus toward the plaintiff. *Byrnes, supra,* 77 Ohio St.3d at 130, 672 N.E.2d at 149. "The mere fact that an employer may have discriminated against other employees, standing alone, is insufficient." *Id.* Here, even if the allegations in his complaint and affidavit establish discrimination against other older employees at John Deere, plaintiff's claim under the direct method still fails because the evidence in this record fails to link John Deere's treatment of the other older employees to plaintiff's termination. *Byrnes, supra.* Absent from the record is evidence demonstrating that any of these older salespersons were similarly situated to plaintiff in terms of job category, qualifications, or performance. Accordingly, plaintiff's age discrimination claim lacks sufficient support in the record to warrant submission to the trier of fact under the direct evidence method.

## B. Indirect Method

On appeal, the parties dispute only the fourth part of the prima facie case: whether plaintiff was replaced by, or his termination permitted the retention of, a person not belonging to the protected class. The protected class in age discrimination cases consists of individuals age forty or older. See R.C. 4112.14(B). The trial court adopted John Deere's contention that it replaced plaintiff with Thomas Jacobs, who was fifty-eight years old at the time he was hired, and thus a member of the protected class. To the contrary, plaintiff contends that Kurzawa, who was under age forty at the time, actually replaced him. Plaintiff further contends that Jacobs's hiring is pretextual because John Deere offered him the position after plaintiff commenced his age discrimination suit and after it had made three unsuccessful attempts to hire a replacement outside the protected class.

Plaintiff's contention that Kurzawa replaced him is not supported by the evidence. A former employee is not replaced when another employee is assigned to perform the former employee's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. *Atkinson v. Internatl. Technegroup, Inc.* (1995), 106 Ohio App.3d 349, 359, 666 N.E.2d 257, 264, citing *Barnes v. GenCorp, Inc.* (C.A.6, 1990), 896 F.2d 1457, 1465, certiorari denied (1990), 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171. The evidence, including plaintiff's own testimony, indicates that Kurzawa only temporarily assumed plaintiff's duties until a replacement could be hired. On the issue of his replacement, plaintiff testified:

"Q. Do you know who replaced you as account manager after you were terminated?

"A. Well, they said Steve Rodts was going to, and then I don't think that materialized. And I think Jim Kurzawa managed it for a while. But I don't think they replaced me with anybody for quite some time. I'm understanding now that there is a gentleman out there on the territory."

Although Kurzawa did not replace plaintiff, the trial court erred by framing its replacement analysis exclusively around the hiring of Jacobs. A rigid, mechanized, or ritualistic approach to the four parts of the prima facie case should not be employed. See *United States Postal Service Bd. of Governors v. Aikens* (1983), 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, 410; *Kohmescher, supra,* 61 Ohio St.3d at 504–505, 575 N.E.2d at 442–443. Accordingly, at least one United States Court of Appeals has indicated that a plaintiff could establish a prima facie case of age discrimination if he or she establishes that the employer planned to replace him or her with a younger employee but was unable to do so. See *Collier v. Budd Co.* (C.A.7, 1995), 66 F.3d 886, 890.

In *Collier,* the plaintiff filed an age discrimination claim in federal court after being terminated from his sales position at the age of fifty-three. He introduced evidence supporting his contention that he satisfied the fourth prong of his age discrimination case in that the employer had originally planned to replace him with a younger employee but was unable to do so. The trial court rejected his contention and granted summary judgment in favor of the employer. Although the plaintiff's claim in *Collier* involved a reduction-in-force analysis, which, the appellate court concluded, did not require the plaintiff to show that he had been replaced, the appellate court addressed whether a plaintiff could establish a prima face case with evidence that the employer unsuccessfully attempted to replace him or her with someone younger. The court began its analysis by noting the purpose of the indirect method and the fourth prong of a prima facie case in particular:

"The *McDonnell Douglas* method is a substitute for proving discrimination by direct evidence, and courts allow the burden-shifting framework because employers do 'not normally memorialize an intention to discriminate on the basis of age.' *Castleman v. Acme Boot Co.,* 959 F.2d 1417, 1420 (7th Cir.1992). The prima facie case, and specifically its fourth prong, are meant to identify situations where the 'actions taken by the employer * * * if unexplained, are more likely than not based on consideration of impermissible factors.' *Allen v. Diebold, Inc.,* 33 F.3d 674, 678 (6th Cir.1994)." *Collier, supra,* at 890.

The court explained that, given the purpose of the fourth part of the prima facie case, evidence indicating that an employer fired an employee intending, but

failing, to replace him with a younger employee is no less suggestive of an impermissible motive than is evidence indicating that the employer intended to replace the employee with a younger employee and succeeded in doing so. Under either scenario, the employer's actions, if left unexplained, permit the inference that the motivation for the employee's termination was to oust an older employee and replace him or her with someone younger. *Id.*

The reasoning in *Collier* applies here. John Deere made three unsuccessful attempts to replace plaintiff with someone who was outside the protected class. It hired the fifty-eight-year-old Jacobs only after plaintiff commenced this action. Plaintiff's evidence establishes the fourth part of his prima facie case because it raises no less suspicion that plaintiff's termination was prompted by an impermissible motive than does evidence showing John Deere successfully replaced plaintiff with one of the three younger persons to whom it had offered his position. Cf. *United States EEOC v. Century Broadcasting Corp.* (C.A.7, 1992), 957 F.2d 1446, 1450 (employee can satisfy the fourth part of the prima facie case by establishing that the employer sought a replacement); *Rollins v. TechSouth, Inc.* (C.A.11, 1987), 833 F.2d 1525, 1528.

Although the trial court incorrectly determined that plaintiff failed to establish a prima facie case of age discrimination, it nonetheless reached the correct result because plaintiff failed to establish a genuine issue of material fact of pretext in response to John Deere's proffered non-discriminatory reason for discharging him.

 John Deere maintains that it terminated plaintiff because of his poor performance and disloyal conduct. To support its explanation, John Deere provided the trial court with evidence documenting criticism of plaintiff's treatment of internal customers or co-employees, and his filing delinquent reports. John Deere also submitted evidence documenting plaintiff's failure to meet increased performance requirements imposed by the company on its sales managers, regardless of age. In light of his performance deficiencies, John Deere placed plaintiff on probation in October 1995, gave him opportunities to improve his performance, and warned him that his employment would be terminated if his performance did not improve. John Deere suspended plaintiff's probation in December 1995 until January 1996 to give plaintiff time to recover from a documented medical condition.

Ultimately, John Deere terminated plaintiff's employment for poor performance and disloyalty on April 12, 1996, after learning of a meeting plaintiff had with William S. Williams, the chief executive officer of the W.W. Williams Company, one of John Deere's largest clients. According to Williams, the meeting occurred on April 5; plaintiff, in his deposition testimony, indicated that he did not have any reason to disbelieve that the meeting occurred on that date.

According to Robert Gray, John Deere's Eastern Division sales manager, plaintiff told Williams that he had been terminated by John Deere, that John Deere was experiencing financial difficulty, and that John Deere's parent company was looking to sell its insurance operations. Given the foregoing, John Deere met its burden of providing a legitimate non-discriminatory reason for terminating plaintiff.

Although not specifically or expressly enumerated as such, plaintiff's attempts to show that John Deere's explanation is pretextual resolve to contentions that the explanation is either (1) factually untrue, or (2) did not actually motivate his discharge. While either method may be used to establish pretext and avoid summary judgment, see *Manzer v. Diamond Shamrock Chemicals Co.* (C.A.6, 1994), 29 F.3d 1078, 1084, the evidence offered by plaintiff does not create genuine issues of material fact under either method.

Concerning the factual accuracy of John Deere's performance explanation, plaintiff failed to rebut much of John Deere's evidence and instead devoted much of his brief and affidavit to justifying why he failed to meet performance objectives that were applied to every person in plaintiff's job category. Plaintiff alleges that the performance objectives were impossible to satisfy and were simply imposed as part of a scheme to remove older salespersons from the company. Yet plaintiff has offered no evidence, beyond conclusory allegations, that would establish the impossibility of the increased performance requirements or rebut John Deere's stated reason for increasing the requirements, improving its profitability. Cf. *Getschmann, supra,* 822 F.Supp. at 78 (performance objectives imposed on an age discrimination plaintiff were not unrealistic or part of a scheme to remove him on the basis of age because, other than conclusory allegations made by the plaintiff, there was no indication that other account executives did not have similar goals and the plaintiff did not proffer any evidence that the goals were out of the ordinary for a person in his position).

Concerning the factual accuracy of John Deere's explanation regarding plaintiff's disloyalty, plaintiff does not deny meeting with Williams and discussing his situation. More important, plaintiff's affidavit admits that plaintiff told Williams that John Deere had been approached by a potential buyer. Plaintiff, in his deposition, also admitted to telling Williams that John Deere was selling part of its business. Williams testified that he was concerned by what plaintiff had told him and that he had had the company's insurance broker contact John Deere to investigate plaintiff's comments. In the final analysis, the evidence, including plaintiff's own deposition testimony, contradicts plaintiff's contention.

The evidence in this record thus does not establish a genuine issue of material fact concerning the accuracy of John Deere's explanation for terminating plaintiff.

Plaintiff also failed to establish a genuine issue of material fact concerning John Deere's actual motivations for terminating his employment. Plaintiff contends that poor performance did not actually motivate his termination because John Deere did not terminate the employment of other sales persons who failed to meet the increased requirements. The affidavit of O'Bryant, plaintiff's co-employee, states that O'Bryant failed to give the required number of presentations in 1994 and 1995, but was not terminated. Plaintiff's evidence again is lacking because sales presentations constituted only one component of John Deere's performance explanation for terminating plaintiff; plaintiff was not terminated for performance issues alone but for a combination of poor performance and disloyalty. Because plaintiff presented no genuine issues of material fact concerning John Deere's motivation for terminating him, the trial court properly granted summary judgment on his age discrimination claim even though it incorrectly determined that he did not establish a prima facie case of discrimination.

## II. Other Claims

### A. Unpaid Commissions

Count two of plaintiff's amended complaint alleges that he earned, but was not paid, certain commissions. The trial court determined that the disputed commissions were the subject of an accord and satisfaction between plaintiff and John Deere in 1993.

The doctrine of accord and satisfaction operates to discharge a disputed debt as a matter of law. *Allen v. R.G. Indus. Supply* (1993), 66 Ohio St.3d 229, 231, 611 N.E.2d 794, 797. "An accord is a contract between a debtor and a creditor in which the creditor's claim is settled in exchange for a sum of money other than that which is allegedly due. Satisfaction is the performance of that contract." *Id.* When a debtor tenders an amount less than the amount in dispute upon the condition that the payment is in full satisfaction of the claim, the creditor has but one alternative: " 'he must accept the amount tendered upon the terms of the condition * * * or he must reject it entirely, or if he has received the amount by check in a letter, he must return it.' " *Id.*, quoting *Seeds Grain & Hay Co. v. Conger* (1910), 83 Ohio St. 169, 93 N.E. 892, paragraph one of the syllabus. By negotiating a check which the debtor offers as a full payment for an unliquidated or disputed debt, " 'the creditor manifests assent to the terms of a new contract which extinguishes the debtor's prior contractual obligation.' " *Id.* at 232, 611 N.E.2d at 797, quoting *AFC Interiors v. DiCello* (1989), 46 Ohio St.3d 1, 6, 544 N.E.2d 869, 873 (H. Brown, J., dissenting). An accord and satisfaction is not effective unless there is a good-faith dispute about the debt and the creditor

is given reasonable notice that the amount tendered is intended to be in full satisfaction of the debt. *Id.* at paragraph two of the syllabus.

Here, both prerequisites have been met. Plaintiff claimed that John Deere owed him approximately $17,000 in unpaid commissions. · John Deere disagreed, informed plaintiff by letter that he was owed only $5,585.04, and sent him a check for that amount, which plaintiff cashed. Thus, a dispute existed as to the amount of the debt, and John Deere, in light of the letter and the check, gave plaintiff reasonable notice that it would pay him $5,585.04 as full satisfaction of the debt. Although plaintiff made a notation on the check that it was not a full and final settlement, the notation is unavailing because a creditor's intent is immaterial if the prerequisites of an accord and satisfaction have been met. *Id.* at 233, 611 N.E.2d at 798. Accordingly, the trial court properly granted summary judgment against plaintiff's unpaid commissions claim.

### B. Declaratory Relief

Count three of plaintiff's amended complaint requests a declaratory judgment that the MPA is void and unenforceable. As discussed earlier, the trial court previously found the MPA to be unenforceable, and this court affirmed the trial court's decision. Thus, the request for declaratory judgment is now moot.

### C. Intentional Interference with a Contractual Relationship

Count four of plaintiff's amended complaint alleges that John Deere intentionally interfered with a contractual relationship between plaintiff and the Barengo Insurance Agency. The trial court determined that John Deere's actions constituted a justifiable attempt to protect a legally protected interest, namely its customers.

To recover on a claim of intentional interference with a contractual relationship, a plaintiff must prove "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 650 N.E.2d 863, paragraph two of the syllabus. *Kenty* indicates that a party is not liable for intentionally interfering with a contract if that party is privileged or justified in doing so. In such cases, the terms "privilege" or "justification" relate to circumstances that excuse conduct that would ordinarily subject the actor to liability. *Smith v. Ameriflora 1992, Inc.* (1994), 96 Ohio App.3d 179, 186, 644 N.E.2d 1038, 1043, fn. 1. A party is privileged or justified in purposely causing another not to perform a contract or continue a business relationship with a third party " 'by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes may otherwise be impaired or

destroyed by the performance of the contract or transaction.' " *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 57, 9 O.O.3d 216, 220, 379 N.E.2d 235, 239, quoting 4 Restatement of Torts (1939), Section 767.

Plaintiff alleges that a letter sent by John Deere's attorney to the Barengo Insurance Agency ("Barengo") interfered with a contractual relationship between plaintiff and Barengo. In contrast to what plaintiff states in his brief, the letter does not threaten to "involve [Barengo] in frivolous litigation if they continued their relationship with Plaintiff." The threat of litigation is directed to any misappropriation by Barengo of John Deere's customer files or other proprietary information.

Moreover, plaintiff concedes that the letter was sent to Barengo on May 20, 1996, approximately five days after the trial court had filed a temporary restraining order prohibiting plaintiff from directly or indirectly soliciting any John Deere customers and from directly or indirectly revealing proprietary information to anyone for the purpose of soliciting any of the company's customers. John Deere's actions, in light of the temporary restraining order, constituted an attempt to protect its customers and proprietary information under the justification the temporary restraining order provides. Accordingly, plaintiff's intentional interference claim must fail.

### D. Unlawful Retaliation

Count five of plaintiff's amended complaint alleges that John Deere retaliated against him by attempting to enforce the MPA because he sought legal counsel and filed an age discrimination claim. The trial court determined that plaintiff failed to establish a causal connection between his filing the age discrimination claim and John Deere's attempt to enforce the MPA.

R.C. 4112.02(I) provides:

"It shall be an unlawful discriminatory practice:

"For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

To establish a prima facie case of unlawful retaliation under R.C. 4112.01(I), an employee must show (1) that he or she was engaged in a protected activity, (2) that he or she was subjected to an adverse employment action, and (3) that a causal link exists between the protected activity and the adverse action. *Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div.* (1994), 99 Ohio App.3d 396, 402, 650 N.E.2d 950, 954, citing *Jackson v. RKO Bottlers of*

*Toledo, Inc.* (C.A.6, 1984), 743 F.2d 370, 375. If the employee successfully establishes a prima facie case of unlawful retaliation, the employer then has the burden of articulating a legitimate reason for its action. If the employer articulates a legitimate reason, then the burden shifts back to the employee to show that the employer's proffered explanation is merely a pretext. *Id.,* citing *Burrus v. United Tel. Co.* (C.A.10, 1982), 683 F.2d 339, 343, certiorari denied, (1982), 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633.

Here, the evidence fails to establish a causal link between plaintiff's assertion of an age discrimination claim and John Deere's attempt to enforce the MPA. Plaintiff filed his original complaint on May 2, 1996, approximately two weeks after John Deere had filed its replevin action against him. On May 14, 1996, John Deere discovered that plaintiff had solicited one of its customers in violation of the MPA, and one day later, on May 15, 1996, John Deere amended its complaint to include a request for an injunction enjoining plaintiff from violating the terms of the MPA. Although the MPA was ultimately held to be unenforceable against plaintiff, there is no evidence in the record suggesting that John Deere invoked the MPA with knowledge of its unenforceability. On this record, John Deere's attempt to enforce the MPA is causally connected, not to plaintiff's assertion of an age discrimination claim, but to John Deere's discovery that plaintiff had solicited one of its customers. Accordingly, the trial court properly granted summary judgment against plaintiff on this claim.

Because the trial court properly granted summary judgment on plaintiff's claims for age discrimination, unpaid commissions, intentional interference with a contractual relationship, and unlawful retaliation, and properly determined plaintiff's request for a declaratory judgment concerning the validity of the MPA to be moot, plaintiff's single assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PEGGY BRYANT, MASON and LAZARUS, JJ., concur.