DECISION
Defendants-appellants, Russell A. Kelm, an attorney, and his clients, Randy Almond, Kurt Koester, Michael Richardson, Ira Johnson, Brewie Gibson, Gerauld Gismondi, Josephine Gismondi, James Swiggum, William Rectanus, DH-KL Corporation, and David K. Harding (collectively referred to as "Kelm clients") appeal the decision of the Franklin County Court of Common Pleas that resolved cross-motions for summary judgment on a creditor's bill action in favor of plaintiff-appellee, Huntington Center Associates. Appellants also appeal the trial court's grant of summary judgment in appellee's favor on counterclaims filed by the appellants. In their notice of appeal, appellants raise the following two assignments of error:
 I. THE TRIAL COURT ERRED IN DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF AND IN GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.
 II. THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS.
Appellate court review of a summary judgment motion isde novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158,162. Pursuant to Civ.R. 56(C), summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. Civ.R. 56(C); State ex rel. Grady v. StateEmp. Relations Bd. (1997), 78 Ohio St.3d 181, 183. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying the portions of the record that establish the absence of a genuine issue of fact on a material element of the non-moving party's claim. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292-293. After the moving party satisfies this initial burden, the non-moving party bears a reciprocal burden to respond by affidavit, or as otherwise provided in Civ.R. 56, and must set forth specific facts showing the existence of a genuine issue for trial. Civ.R. 56(E). If the non-moving party fails to so respond, summary judgment, if appropriate, shall be entered against him. Civ.R. 56(E).
For the reasons that follow, we affirm the judgment of the trial court.
Russell A. Kelm was a partner in the law firm of Schwartz, Kelm, Warren Ramirez. In late December 1995, Kelm resigned as a partner and the firm changed its name to Schwartz, Warren Ramirez ("the SWR partnership"). Several clients of the SWR partnership terminated their relationships with the SWR partnership and became Kelm's clients. Upon his departure, Kelm negotiated a written agreement with the SWR partnership. Under the terms of the written agreement, Kelm owes the SWR partnership a portion of attorney fees and expenses recovered on pending matters in which Schwartz, Kelm, Warren Ramirez had formerly been legal counsel. The clients were notified by Kelm that Kelm would split fees with the SWR partnership. Some or all of these clients are the Kelm clients in the instant matter.
The SWR partnership continued to operate until late January 1996, and it occupied office space located in the Huntington Center in downtown Columbus, Ohio. On February 1, 1996, the SWR partnership converted its business form to a limited liability company known as Schwartz, Warren Ramirez L.L.C. ("SWR L.L.C."). SWR L.L.C. continued to operate in the office space located in the Huntington Center. On August 30, 1996, the firm amended its lease with its landlord, appellee, to change the name of the tenant from the SWR partnership to SWR L.L.C. On April 13, 1998, appellee obtained a $1.5 million judgment against SWR L.L.C. for past due rent.
On December 4, 1998, appellee filed a creditor's bill action against SWR L.L.C., Kelm, the Kelm clients and the defendants in cases brought by the Kelm clients. On March 29, 1999, appellee amended the creditor's bill complaint to add the SWR partnership as a party defendant. In the amended creditor's bill complaint, appellee alleged that it had obtained a $1.5 million judgment against SWR L.L.C. Appellee further alleged that SWR L.L.C. did not have sufficient personal and/or real assets subject to levy on execution to satisfy the judgment. Appellee alleged that SWR L.L.C. has equitable interests in property under the control of the SWR partnership, Kelm, the Kelm clients and defendants in actions brought by the Kelm clients.[1]
On May 17, 1999, SWR L.L.C. served responses to appellee's written discovery requests. SWR L.L.C. admitted that any monies due and payable to the SWR partnership were ultimately due and payable to SWR L.L.C. With regard to its ability to satisfy the $1.5 million judgment against it, SWR L.L.C. indicated that its assets were limited to outstanding accounts receivable and its interest in fees that might be recovered from the Kelm clients. SWR L.L.C. provided appellee with a list of its outstanding accounts receivable.
On April 1, 1999, appellants alleged counterclaims against appellee for invasion of privacy, intentional interference with contractual relations and frivolous conduct.
In their first assignment of error, appellants argue that the trial court erred in granting summary judgment in favor of appellee because appellee failed to meet the three requirements to establish a creditor's bill.
R.C. 2333.01 provides as follows:
 When a judgment debtor does not have sufficient personal or real property subject to levy upon execution to satisfy the judgment, any equitable interest which he has in real estate as mortgagor, mortgagee, or otherwise, or any interest he has in a banking, turnpike, bridge, or other joint-stock company, or in a money contract, claim, or chose in action, due or to become due to him, or in a judgment or order, or money, goods, or effects which he has in the possession of any person or body politic or corporate, shall be subject to the payment of the judgment by action.
A creditor's bill action enables a judgment creditor to secure a lien on those assets of the judgment debtor that cannot be reached by mere execution of the judgment. Union Properties,Inc. v. Patterson (1944), 143 Ohio St. 192. "`[A]n action in the nature of a creditor's suit under R.C. 2333.01 is wholly equitable in nature and, as such, permits the judgment creditor to reach equitable assets which, by reason of * * * uncertainties respecting title or valuation, cannot be effectively subjected under the ordinary legal process of execution by way of judgment liens, attachment or garnishment.'" Hoover v. Professional ExecutiveMtge. Corp. (1985), 21 Ohio App.3d 223, 225. "`The commencement of an action in the nature of a creditor's bill gives to the plaintiff priority over creditors of the defendant not holding specific liens upon his interest in the property in suit.'"Swanbeck v. Sheaves (Mar. 7, 1986), Lucas App. No. L-85-237, unreported, quoting Tischler v. Tischler (1901), 21 Ohio C.C. 166.
"There are three essential elements to a claim under R.C. 2333.01: (1) the existence of a valid judgment against a debtor, (2) the existence of an interest in the debtor of the type enumerated in the statute, and (3) a showing that the debtor does not have sufficient assets to satisfy the judgment against him."Richardson v. Fairbanks (Oct. 28, 1997), Franklin App. No. 97APE03-384, unreported, at 7. The parties agree that appellee has satisfied the first element by obtaining a valid judgment against the debtor, SWR L.L.C. Appellants argue, however, that appellee failed to establish the second and third elements of a creditor's bill.
Appellants argue that appellee failed to establish the second element of a creditor's bill for a variety of reasons. Appellants contend that the interest at issue attorney fees and expenses that Kelm may recover from litigation initiated on behalf of the Kelm clients is not the type of interest enumerated in the statute. This court concludes, however, that R.C. 2333.01 is broad enough to include future attorney fees and expenses. The contractual agreement between Kelm and the SWR partnership provides the partnership with a claim for a share of fees. SeeGem Savings Assn. v. Foreman (Apr. 18, 1986), Montgomery App. No. CA-9667, unreported (noting that, under R.C. 2333.01, "[t]he term `claim' is comprehensive, and would embrace a demand for money in varied forms, whether on contract, express or implied"). The claim could extend to the Kelm clients should they fail to pay fees to Kelm as might be required by law.
Appellants also argue that they are beyond the reach of the creditor's bill because the judgment debtor is SWR L.L.C., and Kelm entered an agreement to pay attorney fees to the SWR partnership, a different entity. R.C. 2333.01, however, allows a creditor to place a lien on assets in which the judgment debtorhas an equitable interest. The statute does not require privity of contract between the judgment debtor and the party from whom the assets may flow, as appellants suggest. The undisputed evidence indicates that "any monies due and payable to the Ohio partnership known as * * * Schwartz, Warren Ramirez are ultimately due and payable to Schwartz, Warren Ramirez, an Ohio limited liability company." (Response to Plaintiff's First Consolidated Discovery Request, Request for Admission No. 7.) As a result, SWR L.L.C., the judgment debtor, has an interest in monies payable to the SWR partnership.
Appellants also argue that the creditor's bill is somehow improper because it targets potential future assets. TheGem Savings Assn. court rejected a similar argument, concluding that the fact that there were no immediate assets "could not have had any critical bearing upon the efficacy of the equitable lien prior to its maturity into an enforceable judgment." Gem SavingsAssn. "Indeed," the Gem Savings Assn. court reasoned, "any `claim' which will not become due until sometime in the future is naturally attended by uncertainty, and furthermore, the infinitive form of the verb, as used in the applicable statute, cannot be reasonably construed to refer to claims that are absolute." Id.
This court therefore concludes that appellee has established the second element for a creditor's bill against appellants.
With regard to the third element, appellants argue that appellee's "only support for the preposition [sic] that there are no assets is in its averment in the complaint." (Appellants' Brief at 9.) The evidence demonstrates, however, that appellee established through written discovery that SWR L.L.C. does not have adequate personal or real property to satisfy the $1.5 million judgment, and its ability to pay its debt hinges on its ability to collect fees in the future pursuant to Kelm's agreement with the SWR partnership.
Because appellee has satisfied all three elements of a creditor's bill and appellants have failed to demonstrate any material disputes of fact, appellants' first assignment of error is overruled.
In their second assignment of error, appellants argue that the trial court erred in granting appellee's motion for summary judgment on appellants' counterclaims for invasion of privacy, intentional interference with contractual relations and frivolous conduct.
The Ohio Supreme Court first recognized a cause of action for invasion of privacy in Housh v. Peth (1956), 165 Ohio St. 35. The Housh court acknowledged the following three types of invasion of privacy: (1) the unwarranted appropriation or exploitation of one's personality; (2) the publicizing of one's private affairs with which the public has no legitimate concern; or (3) the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. Id. at paragraph two of the syllabus. In the instant action, appellants allege that, by publicizing the creditor's bill through filing the complaint and attaching the judgment entry against SWR L.L.C. to the complaint, appellee unlawfully publicized appellants' private affairs and wrongfully intruded into appellants' private activities.
In order to establish an invasion of privacy through publicity, a plaintiff must prove five elements: (1) a publicity to the public at large, or to so many people that the matter is substantially certain to become one of public knowledge; (2) disclosure of facts concerning the private life on an individual; (3) the matter publicized must be highly offensive and objectionable to a reasonable person; (4) the publication must be intentional; and (5) the matter must not be one of legitimate concern to the public. Killilea v. Sears, Roebuck Co. (1985),27 Ohio App.3d 163, 166. "`There is no liability when the defendant merely gives further publicity to information * * * that is already public, such as matters of public record.'" Early v.The Toledo Blade (1998), 130 Ohio App.3d 302, 342, quotingKillilea.
Appellants' publicity tort fails as a matter of law. The $1.5 million judgment against SWR L.L.C. and Kelm's representation of the Kelm clients in pending litigation were already all matters of public record before appellee filed the creditor's bill. Appellee's publication of these facts, therefore, cannot form the basis of appellants' publicity tort claim.
The only remaining disclosures in the creditor's bill concerning Kelm and the Kelm clients occur in vague references, all similar to the following example:
 Plaintiff believes and therefore avers that Defendant Schwartz has certain legal and/or equitable rights and/or interests, including but not limited to fees for legal services, in money, choses in action, accounts receivable and other property in the possession of or under the control of the other Defendants which Defendant Schwartz refuses to apply to the satisfaction of the judgment. [(Emphasis added.) Amended Creditor's Bill Complaint at paragraph 3.]
This publication does not concern any matter related to the private life of Kelm, as it merely relates, albeit vaguely, to Kelm's recovery of fees in his professional capacity as an attorney. See Fallang v. Hickey (Aug. 31, 1987), Butler App. No. CA86-11-163, unreported (concluding that disclosure of facts or events about an individual's professional or business life, including the identities of a physician's patients, is not a disclosure of private facts for purposes of the publicity tort). Nor does the publication reveal any matter related to the private lives of the Kelm clients. It does not, as appellants contend, publicize the private finances of Kelm and the Kelm clients.
The publicity tort fails for the additional reason that the matters publicized are not highly offensive and objectionable. The creditor's bill merely identifies a potential interest in fees for legal services, without embellishment. There is no mention of the underlying substantive claims involving the Kelm clients, and no highly offensive language was used. Accordingly, we conclude that a reasonable person of ordinary sensibilities could not find the publication highly offensive and objectionable.
To establish an invasion of privacy claim based on a wrongful intrusion into private affairs, a plaintiff must establish that the intrusion is "of such a character as would shock the ordinary person to the point of emotional distress."Haller v. Phillips (1990), 69 Ohio App.3d 574, 578. In Haller, at 579, the court quoted Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369,375, as follows:
 "* * * Liability [for wrongful intrusion into private affairs] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'" * * *
Contrary to appellants' assertion that the trial court failed to consider its counterclaim for wrongful intrusion, the trial court expressly concluded that appellee's actions of filing the creditor's bill and judgment entry were insufficient as a matter of law to constitute the requisite outrageous conduct. We agree.
Last, appellants urge this court to recognize a cause of action for false light invasion of privacy. The false light claim is defined as follows in 3 Restatement of the Law 2d, Torts (1977), 394, Section 652E:
 One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability for the other for invasion of his privacy, if
 (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
 (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
The Ohio Supreme Court has declined to recognize a cause of action for false light invasion of privacy. See M.J. DiCorpo,Inc. v. Sweeney (1994), 69 Ohio St.3d 497, 507; Yeager, at 372. See, also, Grange Mut. Cas. Co. v. Klatt (Mar. 18, 1997), Franklin App. No. 96APE07-888, unreported, at 11 ("[a] cause of action for `false light' invasion of privacy is not recognized in Ohio"). Even if the legal theory were viable in Ohio, appellants have failed to provide any evidence to establish the falsity of the publicized material. Moreover, as discussed above, a reasonable person of ordinary sensibilities could not find the publication highly offensive and objectionable.
We therefore affirm the trial court's decision granting summary judgment in favor of appellee on appellants' counterclaim for invasion of privacy.
In their second counterclaim, appellants allege that appellee intentionally interfered with contractual relations between Kelm and the Kelm clients. "In order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damage." Kenty v. Transamerica Premium Ins. Co. (1995),72 Ohio St.3d 415, paragraph two of the syllabus. "[A] party is not liable for intentionally interfering with a contract if that party is privileged or justified in doing so." Ricker v. JohnDeere Ins. Co. (1998), 133 Ohio App.3d 759, 774. "A party is privileged or justified in purposely causing another not to perform a contact or continue a business relationship with a third party `"by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes may otherwise be impaired or destroyed by the performance of the contract or transaction."'" Id. at 774-775.
There is no evidence that appellee intentionally procured a breach of contract between Kelm and the Kelm clients. Indeed, the undisputed evidence establishes that the Kelm clients had already been informed by Kelm about the fee sharing agreement between Kelm and the SWR partnership long before the creditor's bill action was filed. Moreover, even if appellants could establish the other elements of a claim for intentional interference with contractual relations, appellee is entitled to judgment because it was justified in filing the creditor's bill and attaching the judgment entry against SWR L.L.C. We therefore affirm the trial court's decision granting summary judgment in favor of appellee on appellants' counterclaim for intentional interference with a contractual relationship.
In their third counterclaim, appellants allege that appellee engaged in frivolous conduct. Under R.C. 2323.51(B)(1), a trial court may award reasonable attorney fees to any party to a civil action who is adversely affected by the frivolous conduct of another party or legal counsel. Frivolous conduct is defined in pertinent part as: (1) conduct that obviously serves merely to harass or maliciously injure another party to the civil action; or (2) conduct that is not warranted under existing law. R.C.2323.51(A)(2)(a). Frivolous conduct is defined by an objective standard; relief is not dependant on what the non-moving party knew or believed. Ceol v. Zion Indus., Inc. (1992), 81 Ohio App.3d 286,291.
Appellants argue that appellee engaged in frivolous conduct because "the only reason that the case was brought was to cause undue difficulty and harassment in the relationships between Kelm, Kelm Clients and the defendants in pending matters." (Appellants' Brief at 19.) This court has already concluded, however, that appellees are entitled to judgment on the creditor's bill against Kelm and the Kelm clients. In light of that ruling, this court concludes that appellee did not engage in frivolous conduct and affirms the grant of summary judgment in appellee's favor on appellants' counterclaim for frivolous conduct.
 Accordingly, appellants' second assignment of error is overruled.
For the foregoing reasons, appellants' assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The order at issue granted summary judgment on the creditor's bill action in favor of appellee and against Kelm and the Kelm clients. The cross-motions were limited to claims against Kelm and the Kelm clients and do not involve the claims against the defendants in actions brought by the Kelm clients.