DORRIAN, J.
{¶ 1} Plaintiff-appellant, Marchell Housden, appeals the May 26, 2017 judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Wilke Global, Inc. ("Wilke Global") and Michael Wilke ("Wilke") (collectively "appellees"). For the following reasons, we affirm.
I. Facts and Procedural History
{¶ 2} Wilke is the CEO and President of Wilke Global, a company that develops and sells software systems. In 2007, Wilke hired appellant to work as a salesperson for Wilke Global. Appellant was hired to sell Wilke Global's main product, the consumer response system ("CRS") to new customers. Appellant's job duties also included managing existing accounts and selling additional products or modules to existing customers. When appellant was hired she was given the existing customer accounts located to the west of the Mississippi River from Leo Corrigan, the only other person on the sales team. Appellant received compensation both in the form of salary and commissions from new sales.
{¶ 3} In January 2010, Jason Dichter was hired by Wilke Global for its sales *1268 team. At the time of hiring, Dichter received compensation in the form of salary, which was $36,000 higher than appellant's salary at the time of her hiring, and a guaranteed monthly commission rate. After his initial year, Dichter received compensation only in the form of salary because he and Wilke Global could not agree on a commission plan. Initially, Dichter's responsibilities included only new sales, as he was not given any existing accounts to manage. However, when Dichter made a sale to a new customer, he received that account to manage. When Corrigan retired, Dichter received most of Corrigan's existing accounts.
{¶ 4} In 2013, Wilke informed appellant she was not bringing enough value to the company. In September 2013, Tim Nichols, the chief strategy officer for Wilke Global, began working with appellant to develop a new compensation plan with the goal of incentivizing appellant to make more new sales. Appellant prepared several drafts of compensation plans in conjunction with Nichols. On November 17, 2013, Wilke rejected the compensation plan as proposed by appellant and Nichols.
{¶ 5} In 2014, Arthur Rohde was hired by Wilke Global for its sales team. Initially, Rohde was hired to make sales to large accounts, and he was not given any existing accounts to manage at the time of his hiring. However, Rohde's responsibilities eventually transitioned to a mix of account management and sales. Rohde received compensation in the form of salary, which was equal to Dichter's at the time of hiring, and commissions based on a percentage of the revenue generated by sales.
{¶ 6} On September 30, 2014, Wilke sent appellant a draft of a new compensation plan that lowered appellant's base salary and restructured her commission plan. Wilke planned to implement appellant's compensation plan on December 1, 2014, but did not implement the plan until January 2015.
{¶ 7} On January 26, 2015, appellant called Diane Moore, Wilke Global's office manager and bookkeeper, and left a voicemail expressing her dissatisfaction with the new compensation plan. On January 27, 2015, Moore sent appellant an e-mail responding to the voicemail. On the same day, appellant replied to Moore's e-mail. When Moore received appellant's e-mail response, she forwarded the e-mail to Wilke, left the office, and did not return to work until February 2, 2015. On January 27, 2015, appellant, after sending her e-mail to Moore, sent an e-mail to Wilke regarding the changes to her compensation plan, to which Wilke responded.
{¶ 8} On February 2, 2015, Wilke and Moore spoke about Moore's reaction to appellant's communications. On February 5, 2015, Wilke sent appellant an e-mail terminating appellant's employment effective the same day. At the time of her termination, appellant was one of three members on the sales team, including Dichter and Rohde. On February 8, 2016, Wilke Global hired Kyle Spittler, a 28-year-old male, to work for the sales team.
{¶ 9} On October 16, 2015, appellant filed a complaint in the trial court asserting claims of gender discrimination, age discrimination, retaliation, and intentional infliction of emotional distress. On December 17, 2015, appellees filed an answer and motion to dismiss. On January 5, 2016, appellant filed a memorandum in opposition to appellees' motion to dismiss and a motion for leave to amend the complaint. On January 12, 2016, appellees filed a memorandum contra appellant's motion for leave to amend the complaint. On the same date, appellees filed a reply in support of their motion to dismiss.
{¶ 10} On August 19, 2016, appellees filed a motion for summary judgment. On *1269 October 3, 2016, appellant filed a memorandum in opposition to appellees' motion for summary judgment. On October 13, 2016, appellees filed a reply in support of their motion for summary judgment.
{¶ 11} On December 14, 2016, the trial court filed a decision and entry granting in part and denying in part appellees' December 17, 2015 motion to dismiss and granting in part and denying in part appellant's January 5, 2016 motion to amend her complaint. On December 19, 2016, appellant filed her first amended complaint. On December 28, 2016, appellees filed an answer to appellant's first amended complaint. On May 25, 2017, appellant filed a notice of dismissal of her claim for intentional infliction of emotional distress. On May 26, 2017, the trial court filed a decision and entry granting appellees' August 19, 2016 motion for summary judgment.
II. Assignments of Error
{¶ 12} Appellant appeals and assigns the following four assignments of error for our review:
I. The Trial Court Committed Reversible Error By Finding That Appellant Was Not Replaced By A Similarly Situated, Male Employee For The Purposes Of Establishing Gender Discrimination.
II. The Trial Court Committed Reversible Error By Not Finding That Appellant Was Replaced By A Younger Employee For The Purposes Of Establishing Age Discrimination.
III. The Trial Court Committed Reversible Error By Not Finding That Appellant Established Pretext Regarding Her Retaliatory Discharge.
IV. The Trial Court Committed Reversible Error By Finding That Appellant Was Not Able To Establish Pretext Regarding Appellees' Proffered Reason For the Reduction In Her Salary For The Purposes of Establishing Gender And/Or Age Discrimination.
Because some of appellant's assignments of error are interrelated, we shall address them together.
III. Standard of Review
{¶ 13} An appellate court reviews summary judgment under a de novo standard. Brisco v. U.S. Restoration & Remodeling, Inc. , 10th Dist. No. 14AP-533, 2015-Ohio-3567, 2015 WL 5120865, ¶ 19, citing Coventry Twp. v. Ecker , 101 Ohio App.3d 38, 41, 654 N.E.2d 1327 (9th Dist.1995). Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C) ; State ex rel. Grady v. State Emp. Relations Bd. , 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).
{¶ 14} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. Dresher v. Burt , 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. Id. ; Hall v. Ohio State Univ. College of Humanities , 10th Dist. No. 11AP-1068, 2012-Ohio-5036, 2012 WL 5336049, ¶ 12, citing Henkle v. Henkle , 75 Ohio App.3d 732, 735, 600 N.E.2d 791 (12th Dist.1991).
*1270 IV. Applicable Law
{¶ 15} R.C. Chapter 4112 governs anti-discrimination actions brought under Ohio law. "The overall purpose of R.C. Chapter 4112 is to prevent and eliminate discrimination." Ohio Civ. Rights Comm. v. Triangle Invest. Co. , 10th Dist. No. 10AP-1117, 2012-Ohio-1069, 2012 WL 909303, ¶ 9, citing Helmick v. Cincinnati Word Processing, Inc. , 45 Ohio St.3d 131, 133-34, 543 N.E.2d 1212 (1989). See Osborne v. AK Steel/Armco Steel Co. , 96 Ohio St.3d 368, 2002-Ohio-4846, 775 N.E.2d 483, ¶ 5, quoting Elek v. Huntington Natl. Bank , 60 Ohio St.3d 135, 137, 573 N.E.2d 1056 (1991) (stating that "[b]ecause R.C. Chapter 4112 is remedial, it must be 'liberally construed to promote its object (elimination of discrimination) and protect those to whom it is addressed (victims of discrimination)' ").
{¶ 16} R.C. 4112.02(A) provides that it is an unlawful discriminatory practice "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.14(A) governs age discrimination by employers and provides that "[n]o employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." R.C. 4112.02(I) governs retaliatory actions and provides that it is an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."
{¶ 17} R.C. 4112.99 authorizes civil actions for any violations of R.C. Chapter 4112.[1] Generally, Ohio courts look to federal anti-discrimination case law when examining employment discrimination cases made under state law. Nelson v. Univ. of Cincinnati , 10th Dist. No. 16AP-224, 2017-Ohio-514, 75 N.E.3d 1304, ¶ 31, citing Coryell v. Bank One Trust Co. N.A. , 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, ¶ 15. But see Williams v. Akron , 107 Ohio St.3d 203, 2005-Ohio-6268, 837 N.E.2d 1169, ¶ 31 (stating that Ohio courts are not bound to federal interpretation of analogous statutes).
{¶ 18} In order to prevail in an employment discrimination case, a plaintiff must prove discriminatory intent through either direct or indirect methods of proof. Ricker v. John Deere Ins. Co. , 133 Ohio App.3d 759, 766, 729 N.E.2d 1202 (10th Dist.1998), citing Mauzy v. Kelly Servs., Inc. , 75 Ohio St.3d 578, 583, 664 N.E.2d 1272 (1996) ; United States Postal Serv. Bd. of Governors v. Aikens , 460 U.S. 711, 714, fn. 3, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). "[A] plaintiff may establish a prima facie case of age discrimination directly by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent." Mauzy at paragraph one of the syllabus.
*1271 {¶ 19} Absent direct evidence of discrimination, a plaintiff may indirectly establish discriminatory intent using the analysis promulgated in McDonnell Douglas Corp. v. Green , 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), first adopted by the Supreme Court of Ohio in a race discrimination case in Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm. , 66 Ohio St.2d 192, 197, 421 N.E.2d 128 (1981). See Barker v. Scovill, Inc. , 6 Ohio St.3d 146, 147, 451 N.E.2d 807 (1983) (adopting the McDonnell Douglas framework in the context of claims of age discrimination). The McDonnell Douglas framework consists of the employee's prima facie case, the employer's burden to produce a legitimate non-discriminatory reason for the challenged action, and the employee's burden to demonstrate that the employer's reason is pretext and that discrimination is the actual reason for the challenged action.
A. Prima Facie Case
{¶ 20} Establishing a prima facie case " 'creates a presumption that the employer unlawfully discriminated against the employee.' " Williams at ¶ 11, quoting Texas Dept. of Community Affairs v. Burdine , 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The elements required to establish a prima facie case differ based on the nature of the claim and the facts of the case. See id. at ¶ 10, citing McDonnell Douglas at 802, fn. 13, 93 S.Ct. 1817 (stating that "the elements of the prima facie case must remain flexible so that they can conform to the facts of the case"). Appellant has asserted both claims of discrimination and retaliation. We will discuss in detail the elements of a prima facie case for each type of claim below.
B. Employer's Burden of Production
{¶ 21} If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate non-discriminatory reason for the challenged action. Bowditch v. Mettler Toledo Internatl., Inc. , 10th Dist. No. 12AP-776, 2013-Ohio-4206, 2013 WL 5436537, ¶ 16 ; Williams at ¶ 12, citing Burdine at 254, 101 S.Ct. 1089. The employer meets its burden of production by submitting admissible evidence that " 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' " and in doing so rebuts the presumption of discrimination that the prima facie case establishes. (Emphasis sic.) Williams at ¶ 12, quoting St. Mary's Honor Ctr. v. Hicks , 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).
C. Pretext
{¶ 22} If the employer meets its burden of production, a plaintiff must prove by a preponderance of the evidence that the employer's legitimate non-discriminatory reason is merely a pretext for unlawful discrimination. Bowditch at ¶ 17, citing Barker at 148, 451 N.E.2d 807. Generally, courts have found that a plaintiff establishes pretext by proving one or more of the following: (1) the employer's proffered reasons for the adverse employment action had no basis in fact, (2) the proffered reasons were not the true reason(s), or (3) the proffered reason(s) were insufficient to motivate discharge. See , e.g. , Mittler v. OhioHealth Corp. , 10th Dist. No. 12AP-119, 2013-Ohio-1634, 2013 WL 1749697, ¶ 44 ; Johnson v. Kroger Co. , 319 F.3d 858, 866 (6th Cir.2003) ; Manzer v. Diamond Shamrock Chems. Co. , 29 F.3d 1078, 1084 (6th Cir.1994), abrogated on other grounds[2] by *1272 Gross v. FBL Fin. Servs., Inc. , 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), as recognized in Geiger v. Tower Automotive , 579 F.3d 614, 621 (6th Cir.2009). Although the presumption created by the prima facie case disappears once the employer meets its burden of production, "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom * * * on the issue of whether the defendant's explanation is pretextual.' " Reeves v. Sanderson Plumbing Prods., Inc. , 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), quoting Burdine at 255, fn. 10, 101 S.Ct. 1089.
D. Finding of Discrimination
{¶ 23} The ultimate burden of persuasion remains at all times with the plaintiff. St. Mary's Honor at 511, 113 S.Ct. 2742 ; Mittler at ¶ 22. "A case that reaches this point is decided by the trier of fact on the ultimate issue of whether the defendant discriminated against the plaintiff." Williams at ¶ 14. In St. Mary's Honor , the Supreme Court of the United States stated:
We have no authority to impose liability upon an employer for alleged discriminatory employment practices unless an appropriate factfinder determines, according to proper procedures, that the employer has unlawfully discriminated . We may, according to traditional practice, establish certain modes and orders of proof, including an initial rebuttable presumption of the sort we described earlier in this opinion, which we believe McDonnell Douglas represents. But nothing in law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable.
(Emphasis sic.) Id. at 514-15, 113 S.Ct. 2742. In Reeves , the Supreme Court of the United States elaborated:
[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.
This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.
(Emphasis sic.) Id. at 148, 120 S.Ct. 2097. Thus, " 'a reason cannot be proved to be "a pretext for discrimination " unless [the plaintiff demonstrates] both that the reason was false, and that discrimination was the real reason.' " (Emphasis sic.) Williams at ¶ 14, quoting St. Mary's Honor at 515, 113 S.Ct. 2742. See also Hall at ¶ 35.
V. First, Second, and Fourth Assignments of Error-Discrimination on the Basis of Gender and Age
{¶ 24} Before considering the merits of appellant's assignments of error, for purposes of clarity, we briefly restate appellant's claims of gender and age discrimination and the trial court's findings. In her amended complaint, appellant asserted a claim of discrimination on the basis of gender with regard to an alleged reduction in her salary. Appellant also asserted claims of discrimination on the basis of gender and age with regard to the termination of her employment.
{¶ 25} With regard to the reduction in her salary, appellees contended appellant was unable to establish the second and *1273 fourth elements of her prima facie case, namely that she suffered an adverse employment action and a similarly situated non-protected person was treated more favorably. The trial court found a genuine issue of material fact as to whether the change in salary constituted an adverse employment action. The trial court then, assuming without deciding that appellant could establish that a similarly situated non-protected person was treated more favorably, proceeded to analyze appellees' asserted legitimate non-discriminatory reason for the reduction in salary. Finding that appellees met their burden, the court found appellant failed to offer any evidence rebutting appellees' asserted legitimate non-discriminatory reason. As a result, the court found appellant failed to demonstrate that appellees' reason was pretext for unlawful discrimination.
{¶ 26} Next, the trial court considered appellant's claims of gender and age discrimination as related to the termination of her employment. The trial court concluded appellant failed to establish the fourth prong of the prima facie case, namely that she was replaced. The court also found under a reduction-in-force analysis that appellant failed to present additional evidence that she was singled out for impermissible reasons. As a result, the trial court concluded appellant could not establish a prima facie case of gender or age discrimination arising from the termination of her employment. The trial court made no findings regarding appellees' asserted legitimate non-discriminatory reason for her termination or appellant's argument that appellees' asserted reason was pretext for unlawful discrimination. Having briefly summarized appellant's claims and the trial court's findings, we now turn to appellant's assertion in her first, second, and fourth assignments of error that the trial court erred in finding she failed to establish a prima facie case of gender and age discrimination with regard to the termination of her employment.
A. Termination
1. Prima Facie Case
{¶ 27} In order to establish a prima facie case of gender or age discrimination, a plaintiff may demonstrate that he or she: (1) was a member of the statutorily protected class, (2) suffered an adverse employment action, (3) was qualified for the position, and (4) was replaced by a person outside the protected class or that the employer treated a similarly situated non-protected person more favorably. Wasserstrom v. Battelle Mem. Inst. , 10th Dist. No. 15AP-849, 2016-Ohio-7943, 74 N.E.3d 827, ¶ 16 ; Hall at ¶ 15. For purposes of summary judgment, a plaintiff must submit evidence from which a reasonable jury could conclude that the plaintiff established a prima facie case of discrimination. Cline v. Catholic Diocese , 206 F.3d 651, 661 (6th Cir.2000) (stating that a court must "consider[ ] whether there is sufficient evidence to create a genuine dispute at each stage of the McDonnell Douglas inquiry"); Blair v. Henry Filters, Inc. , 505 F.3d 517, 528 (6th Cir.2007) ; Brewer v. New Era, Inc. , 564 F.Appx. 834, 840 (6th Cir.2014).
{¶ 28} In their motion for summary judgment, appellees contended that appellant could not establish the fourth prong of the prima facie case. In response, appellant asserted that she was replaced by Spittler, or, alternatively, was eliminated due to a reduction in force. The trial court found that Spittler did not replace appellant because "[s]imply noting that Mr. Spittler is a member of Wilke Global's sales force is not evidence that Mr. Spittler replaced [appellant]." (May 26, 2017 Decision at 5.) Next, the court found appellant failed to demonstrate she was terminated due to a reduction in force because *1274 she failed to "produce additional evidence that [appellees] discriminated against her on the basis of her gender." (May 26, 2017 Decision at 5.) In her first and second assignments of error, appellant argues the trial court erred in making these determinations and in thus finding appellant had not established a prima facie case with regard to the age and gender discrimination claims.
{¶ 29} Appellees offer several reasons to rebut appellant's claim that she was replaced by Spittler. First, appellees assert that "there is no evidence [that Spittler] was hired to perform [appellant's] duties," but rather that appellant's "duties were absorbed by other Wilke Global employees." (Reply Brief in Support of Sum. Jgmt. at 5; Motion for Sum. Jgmt. at 12.) In support of this, appellant cites to Spittler's deposition testimony in which he stated it was his understanding that he was "in a new role at [Wilke Global]." (Spittler Depo. at 18.) Appellees assert that Spittler's duties were "100%" selling add-ons to existing customers, whereas appellant's duties included, in addition to selling add-ons to existing customers, selling CRS systems to new customers and account management. (Reply Brief in Support of Sum. Jgmt. at 5.)
{¶ 30} Wilke, Dichter, and Rohde testified that immediately prior to appellant's termination, the sales team consisted of appellant, Dichter, and Rohde. Dichter, Spittler, and Wilke all stated that, following appellant's termination, the sales team consisted of Dichter, Rohde, and Spittler. Wilke agreed "[t]o a certain degree" that "although the distribution may be different, all of the people on the sales force had the basic responsibilities of sales and account management." (Wilke Depo. at 151.)
{¶ 31} Appellant stated her responsibilities included an equal share of new sales and current account management. Appellant stated that her account management responsibilities included selling "new features or modules" to existing clients. (Housden Depo. at 142.) When Rohde was hired, Wilke sent an e-mail stating that appellant would be focusing on "new smaller accounts and existing accounts." (Wilke Depo., Ex. 40.) Appellant testified she received a base salary in addition to commission on sales to new customers. Spittler stated his duties included "maintain[ing] relationships with our existing clients and attempt[ing] to sell new products and features within that client base." (Spittler Depo. at 15.) In addition to his base salary, Spittler received a commission based on expected first year annualized revenue from a new sale. Spittler testified that, although his role was primarily with existing customers, he had "brought in a new customer, but they were [in a] different market of an existing customer." (Spittler Depo. at 21.)
{¶ 32} Dichter testified that following appellant's termination, there was a discussion regarding hiring another person to perform some of appellant's duties. Specifically, Dichter stated that "it made sense for us to hire an inexperienced account manager after [appellant] had gone, and the goal of them was to sell those ancillary products and modules to existing CRS clients." (Dichter Depo. at 53.) Further, Dichter stated that "we thought it might make sense to hire somebody who was junior, not in age but junior in career, longevity, to manage various accounts that we needed to be managed." (Dichter Depo. at 53.)
{¶ 33} Appellees contend that "[a]n employee is replaced only where 'another employee is hired or reassigned to perform the plaintiff's duties.' " (Appellees' Brief at 27, quoting Grosjean v. First Energy Corp. , 349 F.3d 332, 336 (6th Cir.2003).) Appellees argue that appellant's duties were spread among existing employees *1275 and, therefore, appellant was not replaced by Spittler.
{¶ 34} The Sixth Circuit, in regard to a workforce reduction, has stated that:
It is important to clarify what constitutes a true work force reduction case. A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.
Barnes v. GenCorp, Inc. , 896 F.2d 1457, 1465 (6th Cir.1990). See also Wise v. Ohio State Univ. , 10th Dist. No. 11AP-383, 2011-Ohio-6566, 2011 WL 6649079, ¶ 9-14 (finding trial court did not err in determining plaintiff's position was eliminated pursuant to a workforce reduction because he was not replaced). But see Merrick v. Hilton Worldwide, Inc. , 867 F.3d 1139, 1146 (9th Cir.2017), quoting Coleman v. Quaker Oats Co. , 232 F.3d 1271, 1281 (9th Cir.2000) (holding a plaintiff in a reduction in workforce case may establish an inference of discrimination "by demonstrating that an 'employer had a continuing need for [the plaintiff's] skills and services in that [his] various duties were still being performed' ").
{¶ 35} Here, appellees do not contend that appellant's position was eliminated as part of a workforce reduction. Indeed, appellees specifically state that appellant "was not terminated due to a reduction in force." (Appellees' Brief at 29.) Furthermore, no evidence in the record supports the conclusion that appellees "consolidated jobs in order to eliminate excess worker capacity." Wise at ¶ 10, quoting Woods v. Capital Univ. , 10th Dist. No. 09AP-166, 2009-Ohio-5672, 2009 WL 3465827, ¶ 58. Thus, we are not bound to follow the dictates of Barnes and related cases which analyzed replacement in the context of an alleged workforce reduction. Furthermore, we find no error with the trial court's determination that appellant failed to demonstrate she was terminated due to a reduction in force.
{¶ 36} Instead, we find Dichter's statements evince that Spittler was hired in response to appellant's termination to perform at least some of the same duties that appellant had performed. This is supported by Wilke's testimony that although the exact distribution of sales to existing customers and sales to new customers differed among the members of the sales team, the basic responsibilities of sales and account management were the same. As it is undisputed that both appellant and Spittler were considered to be members of the sales team, the record reflects they shared, at a minimum, some similar duties and responsibilities.
{¶ 37} Appellees contend Spittler did not replace appellant because he was hired with a different title and substantially lower compensation. During her time at Wilke Global, appellant's title changed from senior account manager or senior account executive to director of sales to vice president of business development. Appellant stated none of her job responsibilities changed when her title changed. Spittler agreed that although his title was account executive, the primary goal of his position was sales. Wilke stated the titles for the members of the sales force "had no indication as far as what their duties were on a day-to-day basis." (Wilke Depo. at 151.) Based on this, we cannot find that the *1276 differences in title between appellant and Spittler to be dispositive of the question of replacement.
{¶ 38} With regard to Spittler's lower compensation, we recognize that some courts have held that differing amounts of compensation can be relevant in determining whether a person served as a replacement. However, we also recognize that employers attempt to justify the replacement of older, more experienced employees with younger, less experienced employees on the basis of cost savings. See Metz v. Transit Mix, Inc. , 828 F.2d 1202, 1208 (7th Cir.1987) ; James v. Sears, Roebuck & Co. , 21 F.3d 989 (10th Cir.1994). Furthermore, courts have stated that the fourth requirement of the prima facie case does not require that "a plaintiff and her replacement must be similarly qualified," but instead "requires a plaintiff to show only that she 'was replaced by a person outside the protected class.' " Vincent v. Brewer Co. , 514 F.3d 489, 495 (6th Cir.2007). As a result, we find the difference in salary between appellant and Spittler to be relevant, but not determinative of the question of replacement.
{¶ 39} Finally, appellees contend Spittler did not replace appellant because there was an interval of approximately one year between appellant's termination and the beginning of Spittler's employment. Courts have held that an interval of time between the termination of an employee and the hiring of another is not necessarily relevant to the question of replacement. Blizzard v. Marion Technical College , 698 F.3d 275, 284 (6th Cir.2012) (finding plaintiff was replaced over one year after termination and stating that "[t]his conclusion is not undermined by the fact that there was a lapse in time between [the plaintiff's] termination date and [the replacement's] hiring date"). But see Simpson v. Midland-Ross Corp. , 823 F.2d 937, 941 (6th Cir.1987). Here, the record reveals some reasons for the length of time between appellant's termination and the beginning of Spittler's employment. Dichter testified that Wilke Global attempted to hire another employee following appellant's termination, but negotiations with the candidate were unsuccessful. Based on the facts of this case, we cannot find that the interval of time between appellant's termination and Spittler's hiring is dispositive of the question of replacement.
{¶ 40} Considering the foregoing, it is a close case as to whether sufficient evidence supports a finding that Spittler replaced appellant. However, construing the evidence in a light most favorable to the appellant and bearing in mind that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous," we find that, for purposes of summary judgment, appellant established a prima facie case of discrimination on the basis of age and gender with regard to her termination.
{¶ 41} Accordingly, we sustain appellant's first and second assignments of error as it relates to her termination claims. This conclusion does not, however, end our discussion nor reverse the trial court's judgment.
2. Legitimate Non-Discriminatory Reason
{¶ 42} In their motion for summary judgment, appellees contended appellant was terminated "because of her unacceptable behavior toward [Moore]." (Mot. for Sum. Jgmt. at 17.) Although the trial court found appellees met their burden of offering a legitimate non-discriminatory reason with regard to the reduction in salary claims, the trial court did not make any finding with regard to the termination claims. As explained below in our discussion of pretext, it is not necessary for us to make such a determination. We assume without deciding that appellees' proffered *1277 reason for termination was a legitimate non-discriminatory reason.
3. Pretext
{¶ 43} In her fourth assignment of error, appellant asserts the trial court erred by finding she was not able to establish pretext with regard to her claim of gender and age discrimination on the basis of an alleged reduction in her salary. Despite this assertion of error, appellant makes no arguments related to the reduction in salary claims. Instead, appellant argues: (1) appellees' reason for terminating her employment was not legitimate and non-discriminatory, and (2) if the court believes the reason to be legitimate and non-discriminatory, the reason is pretext to hide unlawful discrimination.
{¶ 44} In St. Mary's Honor , the United States Supreme Court clarified the court's role at the pretext stage:
[Once] [t]he defendant's "production" (whatever its persuasive effect) [has] been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proved "that the defendant intentionally discriminated against [him]" because of his [age], [ Burdine at 253, 101 S.Ct. 1089 ]. The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and * * * upon such rejection, "no additional proof of discrimination is required ," * * * (emphasis added). But the Court of Appeals' holding that rejection of the defendant's proffered reasons compels judgment for the plaintiff disregards the fundamental principle of Rule 301 that a presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the "ultimate burden of persuasion."
* * *
But a reason cannot be proved to be "a pretext for discrimination " unless it is shown both that the reason was false, and that discrimination was the real reason.
(Emphasis sic.) Id. at 511, 515, 113 S.Ct. 2742.
{¶ 45} In Manzer , the Sixth Circuit Court of Appeals held:
To make a submissible case on the credibility of his employer's explanation, the plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact , (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." McNabola v. Chicago Transit Authority , 10 F.3d 501, 513 (7th Cir.1993) (emphasis added and quotation marks omitted). The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e. , that they are "factually false." [ Anderson v. Baxter Healthcare Corp. , 13 F.3d 1120, 1123-24 (7th Cir.1994).] The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employee's [sic] proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." [
*1278 St. Mary's at 2749, 113 S.Ct. 2742 ]. As [ St. Mary's ] teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.
The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.
(Emphasis sic.) Id. at 1084. Importantly, regardless of the method used, "the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." (Alteration in original.) (Internal quotation marks omitted.) Johnson v. Kroger Co. , 319 F.3d 858, 866 (6th Cir.2003), quoting Braithwaite v. Timken Co. , 258 F.3d 488, 493 (6th Cir.2001).
{¶ 46} Here, appellant does not contest she sent the communications in question. Instead, as appellant does not admit that her conduct could motivate dismissal, she appears to contend that her communications with Moore were insufficient to motivate her termination.
{¶ 47} Moore identified three communications from appellant that she found to be problematic. First, Moore stated that in 2013, prior to the salary reduction, appellant sent her a "nasty e-mail" after appellant moved her residence and noticed a discrepancy in her pay related to differing local taxes. (Moore Depo. at 21.) Second, Moore pointed to a voicemail she received from appellant on January 26, 2015 relating to the salary reduction. Finally, Moore pointed to an e-mail she received from appellant on January 27, 2015 that was also related to the salary reduction.
{¶ 48} In her deposition testimony, Moore made the following comments regarding appellant's communications with her:
[Appellant's Counsel]: Did something that [appellant] do ever make you leave [Wilke Global]?
[Moore]: Yes.
* * *
[Appellant's Counsel]: Did something about this voicemail upset you to the point that where you considered leaving the company?
[Moore]: Not that voicemail. Maybe the combination of that and the e-mail.
[Appellant's Counsel]: Do you remember what the gist of the voicemail was?
[Moore]: I felt, you know, kind of harassed. I felt I was bullied. I felt like she was being very demeaning to me and thinking I should know these things. I felt very intimidated by her. I try to be the most upfront honest employee ever and I just had to get away because I didn't feel like being there and I wasn't going to put up with that with any employee.
[Appellant's Counsel]: Okay. All of those things you just said, was that in response to this voice mail?
[Moore]: It was a combination of both, once I read the e-mail too.
[Appellant's Counsel]: I do have the e-mail. We will talk about that, but I keep seeing this voicemail pop up and I don't *1279 even know what it's about. Do you know what she was asking you for?
[Moore]: I don't to be honest. I don't recall exactly what that voicemail said.
[Appellant's Counsel]: So you have zero recollection?
[Moore]: I do know she had called and, you know, I was taken back by what she said on the voicemail.
* * *
[Appellant's Counsel]: As we sit here today, you don't have any specific recollection of the contents of that voicemail?
[Moore]: Right.
[Appellant's Counsel]: Then there was the e-mail this next day. What was your response to this e-mail?
[Moore]: I sent it off to [Wilke] and said wow, she's calling me a liar here, and I kind of felt I was put in the middle of the situation, that I'm just the processor of the payroll. I have no control over it whatsoever. She shouldn't have been addressing things to me directly.
* * *
[Appellant's Counsel]: After you had sent a copy of the e-mail off to Mike and said whatever you said, what did you do after that?
[Moore]: I just shut down my computer and went home.
[Appellant's Counsel]: How long did you stay at the office before you left?
[Moore]: Maybe five minutes.
[Appellant's Counsel]: Okay. Is that the first time you had just shut down your computer and went home?
[Moore]: Yes.
* * *
[Appellant's Counsel]: How long was it before you came back?
[Moore]: A week.
[Appellant's Counsel]: Were you paid for that week?
[Moore]: Yes, because I took it as vacation.
[Appellant's Counsel]: Were there any considerations that you required before returning to work?
[Moore]: No.
[Appellant's Counsel]: When you came back, was [appellant] still employed?
[Moore]: Yes.
[Appellant's Counsel]: Do you know - - was it your understanding when you came back that she was going to remain an employee?
[Moore]: Yes.
* * *
[Appellant's Counsel]: Was it your plan to come back to work?
[Moore]: No.
* * *
[Appellant's Counsel]: How did you come to the decision that you were going to return?
[Moore]: Perhaps I just felt like I cooled down. I just needed to get away from that environment all together. Get my life a little more stable and hopefully it was with hopes of coming back, talking with [Wilke] so we could address the situation.
[Appellant's Counsel]: Is it your opinion - - are you saying it was [appellant's] actions, solely [appellant's] actions that drove you out?
[Moore]: Absolutely.
[Appellant's Counsel]: So when you say that you wanted to get things a little more stable, what did you mean?
[Moore]: I was very emotional. I took it very personally and it took a while for me to understand that maybe this wasn't all me. It certainly wasn't my fault. It was the company's fault perhaps, maybe [Wilke's] fault, that I just took the brunt of her frustration.
* * *
*1280 [Appellant's Counsel]: You would consider this voicemail to be offensive?
[Moore]: I don't recall what the voicemail is. I remember it being strong. She was very strong in what she was saying.
* * *
[Appellant's Counsel]: Did you find the voicemail upsetting?
[Moore]: That's not what made me leave. That's just - - she was just questioning me. I don't feel that - - I'm just kind of in the middle of processing things. If she has questions, she should not be directing things to me but directly to [Wilke].
* * *
[Appellant's Counsel]: That voicemail in and of itself is not the reason you left?
[Moore]: No.
[Appellant's Counsel]: Was it even part of the reason you left?
[Moore]: No. I think it was a combination of her kind of lashing out at me again or, you know, for the first time before I got the e-mail.
[Appellant's Counsel]: And did you feel in the context of that e-mail that she was lashing out at you?
[Moore]: Yes.
* * *
[Appellant's Counsel]: Is this voicemail on the list of problems you had with [appellant]?
[Moore]: Just the start I would say of her being a little more - - I don't want to say derogatory or a little bit strong in asking me these things.
* * *
[Appellant's Counsel]: What is Exhibit O?
[Moore]: It was the e-mail that she had sent me saying that she was thinking that payroll was called in advance. I felt she was actually thinking that I lied to her. You know, what got me is the paragraph please don't lie in the future, just refer my questions or someone else's to [Wilke]. I thought I didn't lie to her. Where she got the information that payroll was called two weeks in advance, that was the prior payroll company. So at this particular time, payroll was processed right away at that time.
[Appellant's Counsel]: So - -
[Moore]: I just felt she was lashing out at me.
[Appellant's Counsel]: Is there anything in here - - you specifically reference the please don't lie line right there, is there anything else you specifically took offense to?
[Moore]: She was telling me to put myself into her shoes and think, you know - - I don't feel - - and she said she was blindsided. She shouldn't have been blindsided. But that wasn't for me to say or for me to let her know this information in advance.
[Appellant's Counsel]: Okay. We have two different things going on. Were you offended by that paragraph?
[Moore]: Yes.
[Appellant's Counsel]: So you found that personally offensive?
[Moore]: Uh-huh.
[Appellant's Counsel]: And what you said to her that she shouldn't have been blindsided?
[Moore]: Not from me. I'm not the one that blindsided her. I don't have any control over any of that.
[Appellant's Counsel]: Was there anything else in this letter that you took offense to?
[Moore]: You know, she refers to me as the HR person. You know, I handle administration, administrative duties, paperwork. I'm not really the HR department because we don't have such a thing, and for her to think that she should be able to get an honest answer about her paycheck, that does not come from me.
*1281 [Appellant's Counsel]: Okay. But you are the only person that has any HR responsibility at [Wilke Global] right?
[Moore]: Yes.
* * *
[Appellant's Counsel]: Anything else in this letter that you were offended by?
[Moore]: Well, the whole thing saying that I shouldn't lie in the future. I shouldn't feel the need to cover up or create unnecessary excuses.
* * *
[Appellant's Counsel]: Anything else?
[Moore]: You know, she was talking about her healthcare deductions and she did not want to sign up for involuntary life. I had no knowledge of that.
[Appellant's Counsel]: So you were offended by that?
[Moore]: So I don't know if I was offended. I'm just stating a fact. So I would say that's inaccurate in what she thought.
[Appellant's Counsel]: I'm just trying to figure out all the things that - - because it's my understanding that two e-mails and a voicemail from [appellant] drove you to potentially leave your employer of 30 years?
[Moore]: Correct.
[Appellant's Counsel]: And I want to make sure I know all the things you found offensive in here.
[Moore]: I just felt that, you know, she was lashing out at me. She didn't trust me. I felt this was kind of more of a bullying kind of e-mail and I took it very personally.
(Moore Depo. at 20-36.) As reflected in an exhibit attached to Moore's deposition testimony, appellant stated the following in her January 27, 2015 e-mail to Moore:
Thank you for your email. Payroll gets called in 2 weeks in advance at least that has always been the case as explained by you in the past. When retrieving my W2 last week the January check had already been processed. Maybe I am confused or you didn't expect to have to answer questions. I get you don't want to deliver the news from [Wilke]. However in the future as the HR person I have to believe I should be able to get an honest answer about my paycheck. I have never seen a company not discuss the important issues with the same integrity and comittment [sic] as we do the little stuff.
Please put yourself in my shoes for a second and truly think how this big of a change after nearly 8 years with the company what you would feel? Blindsided and insignificant two things we don't even do to our customers who have less loyalty.
This is a significant change in my compensation that I had a right to be told and have an agreed plan in writing before drastic changes were made.
The plan [Wilke] sent me at the end of September is a DRAFT copy. [Wilke] and I were still supposed to discuss questions I raised about its content, amount of salary change and the complexity of the plan. I expected two way communication to take place.
Please don't lie in the future just refer my question or someone else's to [Wilke]. You shouldn't feel the need to cover up or create unnecessary excuses. It is what it is.
I also reviewed my Healthcare deductions and did not want to sign up for involuntary life insurance. I believe I did not sign up for it and will look back at my sheet but will you please make the necessary change to remove from next check.
I appreciate the job you do [Moore] and realize that you get put in the middle of issues that may not be pleasant or have confrontations clearly not something any *1282 of us want to tackle. This is business and it needs to be handled as such.
Thanks, [appellant]
(Emphasis sic.) (Moore Depo. Ex. O.)
{¶ 49} In his deposition testimony, Wilke made the following statements regarding appellant's communications with Moore:
[Appellant's Counsel]: So apparently [appellant] calls [Moore] and left her a voicemail, right?
[Wilke]: Yes.
[Appellant's Counsel]: I understand this voicemail was forwarded on to you.
[Wilke]: I think I heard that at the time, yes.
[Appellant's Counsel]: Okay. What was [sic] the contents of this voicemail?
[Wilke]: Another example of [appellant] complaining about, you know, unprofessional or changing pay role without her, you know, agreement. I don't remember the exact words, though.
[Appellant's Counsel]: Was it offensive?
[Wilke]: Offensive? Help me. What's offensive? Did she swear, you know? Black and blue.
[Appellant's Counsel]: Sure. Did she swear?
[Wilke]: No, I don't think so.
[Appellant's Counsel]: Did she threaten - -
* * *
[Wilke]: Threaten? I don't think she threatened. You mean violence? Workplace violence? No, I don't think that she threatened anything.
[Appellant's Counsel]: Did she call anyone names?
[Wilke]: Certainly, whether it's unprofessional or low or immoral or illegal or asshole, possibly. So certainly asshole you might say is a name. You know, immoral, illegal, unprofessional, I guess those probably aren't names, but I don't know. What's a name?
[Appellant's Counsel]: When she was calling someone an asshole, who was she referring to?
[Wilke]: Me.
[Appellant's Counsel]: Okay. I'll tell you why I'm asking you some of this - -
[Wilke]: Uh-huh.
[Appellant's Counsel]: - - it was suggested yesterday that [Moore] had to leave the office, couldn't come back for several days as a result of this voicemail. Is that true?
* * *
[Wilke]: The voicemails and a series of e-mails that they had.
[Appellant's Counsel]: How many e-mails were there?
[Wilke]: I don't know the exact number.
[Appellant's Counsel]: Did you ultimately receive all of those e-mails?
[Wilke]: I believe I have certainly seen all of those now.
[Appellant's Counsel]: Do you [have] any of those e-mails - - are any of those e-mails offensive in nature?
[Wilke]: Offense is probably in the eye of the receiver. I don't know. But certainly [Moore] took great offense at them.
[Appellant's Counsel]: Did you?
* * *
[Wilke]: I'm not sure the offense in these e-mails were directed at me or when you throw out words, whether it's, you know, unprofessional, illegal, immoral, asshole, I'm a boss. I've dealt with customers. I've dealt with employees for 35 years. You can't have too thin a skin when you are running a business and dealing with quite a variety of people.
[Appellant's Counsel]: So you personally weren't offended by the contents of these e-mails.
*1283 [Wilke]: Offensive, I don't know how far that goes. Disappointed, upset again, bothered, absolutely.
* * *
[Appellant's Counsel]: Is this why she was fired?
[Wilke]: It is why she was fired.
[Appellant's Counsel]: Okay.
[Wilke]: There's no question. Now, was it a voicemail or e-mail? It was a negative impact on another person.
(Wilke Depo. at 114-17.)
{¶ 50} Appellant claims that appellees' legitimate non-discriminatory reason is undermined in part because "Moore did not believe [appellant] should be terminated." (Appellant's Brief at 19.) This is not an entirely accurate reflection of the record. Regarding what actions she thought needed to be taken to resolve the problems between her and appellant, Moore stated:
[Appellant's Counsel]: You said in the one text message that you sent it says things need to change. I will not ever be back in. What did you mean by that?
[Moore]: I thought [appellant] needed to be addressed in the way she talked to me.
[Appellant's Counsel]: Did you mean she needed to be terminated?
[Moore]: Not necessarily.
(Moore Depo. at 47.)
{¶ 51} Next, appellant asserts that "Moore admits that the voicemail did not upset her." (Appellant's Brief at 18.) Appellant therefore concludes her e-mail to Moore was the lone offensive communication. Again, this mischaracterizes Moore's deposition testimony. Moore did not specifically recall what appellant said in the voicemail, but she stated that she was "taken back" by the voicemail and stated that her response to appellant's communications was based on a "combination of both" the voicemail and the e-mail. (Moore Depo. at 24; 23.)
{¶ 52} Finally, appellant asserts appellees' legitimate non-discriminatory reason is pretext because "Wilke admits that he read the email, and didn't find it offensive, yet he claims to have terminated [appellant] over sending it." (Appellant's Brief at 19.) While Wilke himself did not find the communications to be necessarily offensive, he definitively stated that appellant was fired as a result of her communications with Moore. Moore stated in her deposition that she found appellant's e-mail to be extremely offensive. Based on his conversations with Moore, Wilke perceived that Moore "took great offense at them." (Wilke Depo. at 116.)
{¶ 53} Thus, appellant's arguments for claiming that appellees' proffered reason was insufficient to motivate her termination lack support in the record. Importantly, appellant does not provide evidence that a similarly situated comparator was treated more favorably for engaging in similar conduct. Although appellant claims the e-mail was "non-offensive" and characterizes Moore's response as "very emotional," appellant has failed to support with evidence in the record her argument that her conduct was insufficient to motivate discharge. Therefore, we find for purposes of her claim of wrongful termination that appellant has failed to demonstrate pretext. Accordingly, we overrule appellant's fourth assignment of error as it relates to her claims of wrongful termination.
B. Reduction in Salary
1. Prima Facie Case
{¶ 54} As noted previously, the trial court found a genuine issue of material fact existed as to whether the reduction in salary constituted an adverse employment action. Furthermore, the court assumed without deciding that appellant could establish she is similarly situated to Dichter *1284 and Rohde. Neither appellant nor appellees challenge these findings on appeal.
2. Legitimate Non-Discriminatory Reason
{¶ 55} The trial court found appellees met their burden of offering a legitimate non-discriminatory reason with regard to the reduction in salary: "[appellees] altered [appellant's] compensation, by reducing her base salary and increasing her opportunity to earn commissions, to incentivize her to make more sales due to her performance. Moreover, [appellees] contend that each employee's compensation was different due to their different sales roles, and that [appellees] did not need to incentivize Mr. Dichter and Mr. Rohbe [sic] based upon their performance." (May 26, 2017 Decision at 6.) Appellant did not challenge this finding as it related to her reduction in salary.
3. Pretext
{¶ 56} In her fourth assignment of error, appellant asserts the trial court erred by finding she was not able to establish pretext with regard to her claim of gender and age discrimination on the basis of an alleged reduction in her salary. Despite this assertion of error, appellant makes no arguments related to the reduction in salary claims. Instead, as noted in our discussion regarding pretext and termination, appellant argues: (1) appellees' reason for terminating her employment was not legitimate and non-discriminatory, and (2) if the court believes the reason to be legitimate and non-discriminatory, the reason is pretext to hide unlawful discrimination.
{¶ 57} With regard to the reduction in salary, the trial court found appellant's "memorandum contra does not make any argument to refute [appellees'] proffered reason for reducing her pay," and, thus, she "failed to carry her Civ.R. 56 burden to establish pretext." (May 26, 2017 Decision at 6.) We have reviewed the memorandum contra and confirmed the same and further note that appellant has not supported her claimed fourth assignment of error as it relates to the reduction in salary with arguments or references to the record in her appellate brief.
{¶ 58} "The burden of affirmatively demonstrating error on appeal rests with the party asserting error." Lundeen v. State Med. Bd. of Ohio , 10th Dist. No. 12AP-629, 2013-Ohio-112, 2013 WL 209136, ¶ 16, citing State ex rel. Petro v. Gold , 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, ¶ 51 (10th Dist.), citing App.R. 9 and 16(A)(7). Pursuant to App.R. 12(A)(2), an appellate court may " 'disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).' " Morgan v. Ohio State Univ. College of Dentistry , 10th Dist. No. 13AP-287, 2014-Ohio-1846, 2014 WL 1775732, ¶ 64, quoting Lundeen at ¶ 16. " 'It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error.' " Cook v. Ohio Dept. of Job & Family Servs. , 10th Dist. No. 14AP-852, 2015-Ohio-4966, 2015 WL 7738415, ¶ 40, quoting Bond v. Canal Winchester , 10th Dist. No. 07AP-556, 2008-Ohio-945, 2008 WL 600201, ¶ 16. See also Young v. Locke , 10th Dist. No. 13AP-608, 2014-Ohio-2500, 2014 WL 2582974, ¶ 16 (" App.R. 16(A)(7) requires that an appellate brief contain an argument in support of each assignment of error presented for review with citations to the authorities, statutes, and parts of the record on which appellant relies."). "It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error." Petro at ¶ 94.
*1285 {¶ 59} Because appellant failed to advance an argument in the trial court and on appeal, we find appellant has waived the issue of pretext with regard to her claim of gender discrimination on the basis of the alleged reduction in her salary. Accordingly, pursuant to App.R. 12(A)(2) and 16(A), we overrule the fourth assignment of error as it relates to her claims of reduction in salary.
{¶ 60} Accordingly, appellant's fourth assignment of error is overruled in its entirety.
VI. Third Assignment of Error: Retaliation
{¶ 61} In her third assignment of error, appellant asserts the trial court erred in finding she failed to establish pretext regarding her retaliation claim. Appellant also argues, without separately assigning as error, that the trial court erred in finding she had not established the fourth prong of the prima facie case, i.e. causal connection. Despite appellant's assertion in her assignment of error, the trial court never addressed pretext but, rather, found appellant failed to establish a prima facie case of retaliation.
{¶ 62} In order to establish a prima facie case of retaliation, pursuant to R.C. 4112.02(I), a plaintiff must demonstrate that: "(1) the plaintiff engaged in a protected activity, (2) the employer knew the plaintiff engaged in the protected activity, (3) the employer subjected the plaintiff to an adverse employment action, and (4) a causal link existed between the protected activity and the adverse action." Dautartas v. Abbott Laboratories , 10th Dist. No. 11AP-706, 2012-Ohio-1709, 2012 WL 1344030, ¶ 49. The establishment of a prima facie case creates a presumption that the employer unlawfully retaliated against the plaintiff.
{¶ 63} If a plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a legitimate non-discriminatory reason for its actions. Greer-Burger v. Temesi , 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 14, citing McDonnell Douglas at 802, 93 S.Ct. 1817. If the employer satisfies this burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason was not the real reason for the employment decision. Id. , citing Burdine at 256, 101 S.Ct. 1089.
{¶ 64} In their motion for summary judgment, appellees argued appellant could not satisfy the first, second, and fourth prongs of the prima facie test. The trial court found, without further explanation, that "[a]s to the first two prongs, when examining the evidence in a light most favorable to [appellant], the Court finds that genuine issues of material fact remain as to whether [appellant] made reports of discrimination to [appellees] and whether [appellees] knew that [appellant] engaged in this activity." (May 26, 2017 Decision at 8.) Appellees have not challenged this finding on appeal.
{¶ 65} As to the fourth prong, appellant argued in the trial court that the close temporal proximity between her complaint of discrimination and her termination was sufficient to establish a causal connection. The trial court found appellant's voicemail and e-mail to Moore was "evidence of an intervening workplace issue" such that "temporal proximity alone is not enough to establish a causal connection." (May 26, 2017 Decision at 9.) Further, the court found that "[b]ecause [appellant] does not direct the Court to any other indicia of retaliation, she has failed to establish the fourth prong of the prima facie case for retaliation." (May 26, 2017 Decision at 9.)
{¶ 66} On review, we conclude it is not necessary to address appellant's arguments regarding the prima facie case because we find she has failed to demonstrate *1286 pretext. In her brief on appeal, appellant merely reiterates the arguments she made regarding pretext for her wrongful termination claims. As we have previously found appellant's argument regarding pretext for her termination to be without merit, we conclude appellant has failed to demonstrate pretext with regard to her claim for retaliation.
{¶ 67} Accordingly, we overrule appellant's third assignment of error.
VII. Conclusion
{¶ 68} Having sustained appellant's first and second assignments of error, but ultimately having overruled appellant's third and fourth assignments of error which are dispositive, we hereby affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
HORTON, J., concurs.
BRUNNER, J., concurs in part and dissents in part.
{¶ 69} I would sustain appellant's third and fourth assignments of error relating to the pretext element of both retaliatory discharge and gender and/or age discrimination. The evidence offered by appellees of a legitimate, non-discriminatory reason for terminating appellant does not without further interpretation suffice as such. It also leaves open the mirror-image question of whether appellant has adequately discredited such a proffered reason as a pretext. This issue is highly material to the summary disposition of the matter as raised in the third and fourth assignments of error, and it should go to a jury.
{¶ 70} Appellee Michael Wilke stated that appellant's communications, some of which the recipient could not remember what was said, were not necessarily offensive to Wilke but that, since the recipient of them took great offense to them, he fired appellant. "Pretext may be proved either by direct evidence that [unlawful] animus motivated the discharge or by discrediting the employer's rebuttal evidence." Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm. , 66 Ohio St.2d 192, 197, 421 N.E.2d 128 (1981), citing McDonnell Douglas Corp. v. Green , 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The evidence offered in support of a legitimate non-discriminatory reason may be discredited with opposing evidence or with argument. The majority limits this to evidence only. See Majority Decision at ¶ 52. If this is the law, an employer may offer any manner of reason for termination, withhold, or engage in foot-dragging in discovery, and deprive the employee of evidence, even when the proffered reason may be susceptible of more than one interpretation and discredited by its character. When we require that pretext be established by evidence in all cases, even though in some cases argument alone is enough because of the weak evidentiary quality of the proffered reason, we deny a fair remedy to an aggrieved employee.
{¶ 71} The majority recognizes that appellant offers deposition evidence and an interpretative argument: " 'Wilke admits that he read the email, and didn't find it offensive, yet he claims to have terminated [appellant] over sending it.' (Appellant's Brief at 19.)." (Majority Decision at ¶ 52.)
{¶ 72} This evidence, adduced from appellee Wilke's deposition, calls for interpretation and judgment concerning whether it is a legitimate, non-discriminatory reason for appellant's termination. Only a factfinder may interpret its truth and import for the purposes of determining whether appellees have offered a legitimate non-discriminatory reason and whether appellant has discredited that evidence as pretext. Without this evidentiary *1287 determination, some of which necessarily involves appellee Wilke's credibility, appellees did not actually clear the hurdle they needed to avoid a jury trial by avoiding a question of material fact. And it should be emphasized that the trial court was required under Civ.R. 56(C) to interpret the evidence in a light most favorable to the appellant, as the nonmoving party.
{¶ 73} The majority recognizes that the question of pretext may call for a jury determination, quoting Reeves v. Sanderson Plumbing Prods., Inc. , 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citation omitted). In paragraph 22, the majority states, " 'the trier of fact may still consider the evidence establishing the plaintiff's prima facie case "and inferences properly drawn therefrom * * * on the issue of whether the defendant's explanation is pretextual." ' " Because neither this Court nor the trial court should be determining that question, I would sustain appellant's third and fourth assignments of error and deny summary judgment.
{¶ 74} For this reason, I respectfully dissent from the decision of the majority and concur with the majority's decision sustaining appellant's first and second assignments of error.

We note that R.C. 4112.14(B) also authorizes civil actions for violations of R.C. 4112.14(A).

As noted in Rhoades v. Std. Parking Corp. , 559 F.Appx. 500, 502 (6th Cir.2014).